IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SYLVIA A. FRIPP | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CITY OF ATLANTA, GEORGIA | ) | <u>Jury Trial Demanded</u> |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT FOR DAMAGES</u>

NOW COMES the Plaintiff**,** SYLVIA A. FRIPP, through her undersigned

counsel of record, and files this Complaint for Damages against Defendant, CITY

OF ATLANTA, GEORGIA (hereinafter, referred to as "Defendant" or the"City")

on the following grounds:

## <u>JURISDICTION AND VENUE</u>

## **1.**

This action is brought by the Plaintiffs for damages against Defendant

pursuant to 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution;

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et</u> <u>seq</u>.,

as amended; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*;

and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

**2.**

Plaintiff invokes this honorable Court's federal question jurisdiction allowing this action to be brought in any judicial district in the state in which the unlawful employment practice was committed, and 28 U.S.C. §§ 1331 and 1343. Plaintiff seeks money damages, declaratory and injunctive relief, expenses of litigation, including reasonable attorney fees and costs, statutory penalties, and punitive damages.

**3.**

Venue is proper in this Court as the facts giving rise to Plaintiff's claims occurred within the area encompassed by the  United States District Court for the Northern District of Georgia, and in particular, the Atlanta Division of said Court pursuant to 28 U.S.C. § 1391.

**<u>THE PARTIES</u>**

**4.**

Plaintiff is a citizen of the United States of America. During all times relevant to this action, Plaintiff resided in Cobb County, State of Georgia.   Plaintiff submits herself to thejurisdiction of the United States District Court for the Northern District of Georgia for any and all purposes related to or arising from the action within.

**5.**

Defendant is a municipal corporation organized and existing under the laws of State of Georgia with the capacity to sue and be sued; and therefore, subject to personal jurisdiction in Georgia.

**6.**

Defendant may be properly served with process by delivering a copy of the summons and complaint to Mayor Keisha Lance Bottoms at the Office of the Mayor, Executive Offices, 55 Trinity Avenue, SW, Atlanta, Georgia 30303.

**7.**

During all times relevant to this action, Plaintiff was employed with Defendant and worked in the City's Public Works Department.

**8.**

During all times relevant to this action, Defendant met the jurisdictional prerequisites for a claim under Title VII.

**9.**

During the relevant time period, Defendant was an "employer" as defined by Section 701(b) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(b)) and is thus, covered by, and subject to, the provisions of Title VII, 42 U.S.C. § 2000e et seq., as amended.

**10.**

Defendant, including its supervising personnel, officials, agents, officers, and employees were responsible for all acts complained of herein.

## NATURE OF THE ACTION

### 11.

This action arises out of events during Plaintiff's terms and conditions of employment with Defendant. Therefore, this action seeks declaratory and injunctive relief, nominal, compensatory, punitive, and liquidated damages, backpay with interest and front pay, if applicable, based upon the Defendant's intentional discriminatory conduct, retaliation, and other unlawful employment practices under 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

## FACTUAL ALLEGATIONS

### 12.

Plaintiff was employed full-time with Defendant from April 2013 until April 2021 when she was wrongfully terminated.

### 13.

During the relevant time period of Plaintiff's complaint, Plaintiff worked in Defendant's Public Works Department and was assigned to the Motor Pool on or

about May 15, 2015 where she often cross-trained in various areas (Concrete, Bridge Shop,Asphalt, and Motor Pool) within the department.

## 14.

In or around November 2015, Plaintiff complained to Defendant's supervisory officials, including Sylvester Alexander, Manager of Highway and Street Department, Garrett T. Bell, Installation Chief, and John Roberts, Bridge Maintenance Coordinator, that she was being sexually harassed by a male co-worker, Derek Ponder.

## 15.

Defendant did not take the appropriate corrective action to timely investigate or properly address Plaintiff's complaints.

## 16.

Plaintiff avoided Ponder when possible but Ponder continued to engage in intimidating behavior towards Plaintiff.

## 17.

In or around January 2016, Plaintiff repeatedly complained to her supervisors, including Garrett T. Bell, Installation Chief, Ed Dodson, Street Maintenance Supervisor, and Luther Foster, Street Maintenance Supervisor (Concrete Department), about working in a hostile work environment, and again Plaintiff's complaints were not investigated by Defendant.

**18.**

In or around February 2016, Plaintiff complained about sexual harassment, retroactive pay, and a hostile work environment to Richard Mendoza, Commissioner, Angela Addison, Deputy Commissioner, Lydia Jamison, Labor Relations Commissioner, Yvonne Yancy, HR Commissioner, and Paula McGee, HR Manager, but Defendant's management officials failed to resolve Plaintiff's complaints.

**19.**

In or about February 2016, Plaintiff asked her supervisors,including Sylvester Alexander, Manager of Highway and Street Department, and Ed Dodson, Street Maintenance Supervisor, and Luther Foster, Street Maintenance Supervisor, to remove her from many job assignments in the Concrete Department to avoid any interactions with Ponder.

**20.**

In or around March 2016, after Ponder made false accusations against Plaintiff, Plaintiff filed a grievance against Ponder alleging she was working in a hostile work environment and continued to be bullied and harassed by Ponder and Foster.

**21.**

On or about March 18, 2016, Michael Dodson reassigned Plaintiff to

Defendant's Bridge Shop where Plaintiff was the only female employee working with approximately seven (7) male employees.

**22.**

On April 29, 2016, Plaintiff injured her knee at work, and took time off from work for treatment from on or about August 11, 2016 until September 29, 2016, including undergoing surgery.

**23.**

While on leave, on or about May 1, 2016, Plaintiff's former legal counsel sent an *Ante Litem Notice* to the City of Atlanta pursuant to O.C.G.A. §36-33-5(b) regarding Plaintiff's claims of sexual harassment against Ponder and the City's failure to properly investigate Plaintiff's complaints or prevent further harassment.

**24.**

On or about September 29, 2016, when Plaintiff returned towork on light duty, she was temporarily assigned to the front office in Defendant's Bridge Shop until she was released to full duty in or around February 2017.

**25.**

In or around March 2017, Plaintiff continued to be assigned to the Bridge Shop, but she worked in the field under the supervision of Joann Henderson, Acting Installation Chief (Area Supervisors of all Supervisors), Horace Scott,

Acting Manager (Installation Chief), John Roberts ("Roberts"), Bridge

Maintenance Coordinator, and Victor Price ("Price"), Bridge Maintenance

Supervisor.

**26.**

Unfortunately, Plaintiff was assigned vehicles in poor condition, was

assigned faulty equipment/tools, and Plaintiff was forced to worked in

hazards conditions in order to perform her job duties.

**27.**

In 2017, Roberts recommended that Plaintiff assume more responsibility

and perform additional tasks if she was interested in a supervisory position in the

Public Works Department.

**28.**

In 2017, Plaintiff often performed work outside the scope of her job duties

as an Equipment Operator II, including acting as a team leader on job

assignments, performing pre-trips and safety checks, completing work orders, and

training employees on various jobs with the expectation that she would be

promoted to a supervisory position.

**29.**

On or about March 31, 2017, Plaintiff filed a grievance against Tony

Turman, Bridge Maintenance Supervisor, for abuse of power, intimidation, unsafe

working conditions, and retaliation.

**30.**

In or around May 2017, Plaintiff, who worked as an Equipment Operator II, Clarence Paul, Welder, and several Construction Maintenance Workers (Joseph Banks, James Spencer, Steffon Mitchell, and Jerrod Dill, and John Tolbert) complained that Turman abused his authority as a crew supervisor and exposed them to unsafe working conditions.

**31.**

In or around June 2017, Allen Smith became the Senior Public Works Manager overseeing the Bridge Shop, Concrete, and Asphalt, and Horace Scott and Joann Henderson moved back to their former positions.

**32.**

On or about July 12, 2017, Plaintiff filed a second grievance against Turman for abuse of power, unsafe working conditions, retaliation, falsifying documents (maintenance work orders), and performing substandard work, but Defendant again failed to take any action to resolve Plaintiff's concerns.

**33.**

In or around October 2017, Plaintiff again complained to her supervisors about working in a hostile work environment and retaliation after a male co-worker (James Harris, Graffiti Worker), who Plaintiff was assigned to train, verbally threatened Plaintiff, often used profanity in the workplace, and refused to perform his job duties.

**34.**

According to Plaintiff, other co-workers, including Clarence Paul, Welder, and the Construction Maintenance Workers (Steffon Mitchell and James Spencer) witnessed Harris' hostile and intimidating behavior towards the Plaintiff.

**35.**

Plaintiff's supervisors, including Horace Scott, Installation Chief, ignored Plaintiff's complaint and later engaged in retaliatory behavior towards Plaintiff.

**36.**

On or about November 2, 2017, Scott told Plaintiff in the presence of her Union Representative (Carlton Hamm), that her supervisors (John Roberts and Victor Price) were not allowed to let her take the Bridge Shop's crew out to job sites as the Lead.

**37.**

In a meeting on November 6, 2017, Scott told employees assigned to the Bridge Shop that Banks would be promoted from Equipment Operator I to Supervisor and the chain of command would include Scott, Smith, Price, Banks, Paul, James Spencerand Jose Velarde, Equipment Operator II.

**38.**

Scott overlooked Plaintiff for the promotion to Supervisor although Plaintiff held a higher-grade position as Equipment Operator II than Banks, had acted as the crew's lead on many projects, and performed assignments outside the scope of her job duties without any additional pay.

**39.**

On or about November 7, 2017, the crew's new supervisor, Joseph Banks, told Plaintiff she was a distraction to the workcrew, falsely accused Plaintiff of failing to comply with a direct order regarding a job assignment, and threatened to terminate Plaintiff's employment.

**40.**

Banks also instructed Plaintiff not to communicate with employees, Steffon Mitchell, James Spencer, and John Tolbert (CMW) in the presence of Clarence Paul.

**41.**

Plaintiff immediately spoke with the Commissioner (Larry King) about Banks' demeaning and hostile behavior towards her,but no action was taken to address Plaintiff's concerns.

**42.**

On or about November 9, 2017, Plaintiff sought counseling from the City's Employee Assistance Program (EAP) due to a hostile work environment.

**43.**

On or about November 16, 2017, Price falsely accused Plaintiff of leaving work early, but Plaintiff explained to Price and Marion Waters, Laborer, who often displayed aggressive behavior toward Plaintiff, that crew members should be allowed to leave the job site and return to the Bridge Shop once the job was completed instead of employees' riding the clock.

**44.**

In November 2017, Plaintiff submitted a written request to Defendant seeking additional compensation and backpay for working out of class, including the tasks that she performedoutside the scope of her job duties.

**45.**

In or around November 20, 2017, Plaintiff complained in writing to Allen Smith that some of her male supervisors had abused their authority in the workplace including Horace Scott, Joseph Banks, Victor Price, and Tony Turman,

Bridge Maintenance Supervisor, by repeatedly subjecting her to harassment, intimidation, and bullying.

**46.**

Specifically, Plaintiff told Allen Smith that Victor Price had inappropriately touched her face in a sexual manner while working with him on a job.

**47.**

At the same time, Banks also began soliciting unfavorable statements from Plaintiff's crew members about Plaintiff's work performance and behavior.

**48.**

In or around November 2017, Plaintiff was reassigned from the field to the administrative building at the Bridge Shop where she performed odd jobs and administrative tasks.

**49.**

Plaintiff continued to seek counseling for work-related stress until August 28, 2018.

**50.**

In or around December 2017, Plaintiff aggravated her knee injury and continued to seek treatment from her physician.

**51.**

In or around February 2018, Schyuler L. Brown, Human Resources

Representative, met with Plaintiff in the presence of her Union Representative to discuss her previous complaint of sexual harassment against Derek Ponder and her other complaints of harassment and retaliation against her male supervisors.

**52.**

Defendant's Human Resources Office supervisory officials, improperly disclosed the detailsof her sexual harassment complaint and reason(s) for reassignments to other employees (Gregory Roberts and Tony Turman) without Plaintiff's permission.

**53.**

On or about March 14, 2018, Maya P. Smith, Human Resources Department, denied Plaintiff request for compensation for working out of class, which Plaintiff protested in writing.

**54.**

On or about March 16, 2018, Plaintiff asked Lisa Reed, Human Resources Representative, to schedule a meeting with Cotena Alexander, Program Management Officer, and her crew members (Clarence Paul and James Spencer) to discuss the lack of leadership in the department by her supervisors, including Allen.

**55.**

Plaintiff waited several weeks, but Cotena Alexander never met with

Plaintiff and her crew members.

**56.**

On or about April 10, 2018, Plaintiff filed a formal charge of discrimination (hereinafter, "First EEOC Charge") against Defendant for sex discrimination, hostile work environment, and retaliation in violation of Title VII.   A true and accurate copy of the First EEOC Charge is attached hereto as Exhibit "A," which is made a part hereof by reference.

**57.**

In or around May 2018, Plaintiff filed a second claim for workers' compensation for an injury to her feet that occurred in April 2018 while working in contaminated water.

**58.**

On or about June 14, 2018, Plaintiff learned that Allen Smith intended to reassign her from the Bridge Shop to the Shape and Gravel Section after Banks complained that Plaintiff should not be allowed to park at the front of the administrative building.

**59.**

On or about June 15, 2018, Plaintiff had a follow-up appointment with her physician who released Plaintiff to return to work on light duty after an examination of her knee.

**60.**

When Plaintiff returned to work on June 15, 2018, Allen Smith,

Transportation Manager, refused to accommodate Plaintiff's request for light

duty even though Plaintiff had been previously working in the Bridge Shop's

administrative building performing less rigorous tasks.

**61.**

Plaintiff was unable to perform her job duties as an Equipment Operator II

without an accommodation for light duty from Defendant.

**62.**

Defendant approved Plaintiff's request for Family and Medical

Leave from June 1, 2018 through June 1, 2019.

**63.**

Plaintiff continued to seek treatment for her medical condition(s), including

undergoing a second surgery on or about November 27, 2018, and remained under

a doctor's care.

**64.**

While on leave, in or around August 2018, Plaintiff filed a second

complaint of harassment against Banks.

**65.**

In or around August 2018, Plaintiff expressed concerns to Andrea

McClane, Executive Safety Director, and the City's Department of Human Resources (Schyuler L. Brown and James Merriweather) about the safety issues involving Banks and the reckless behavior that Banks had shown at work towards employees.

**66.**

On or about October 16, 2018, after McClane, Brown and Merriweather failed to address Plaintiff's safety concerns involving Banks, Plaintiff's union representative, Anna Avato, requested a meeting with Nia Parker, HR Director, on behalf of Plaintiff.

**67.**

On or about October 24, 2018, Plaintiff and her union representative (Avato) met with Parker to discuss Plaintiff's concerns, including Plaintiff's recent work-related injury and working out of classification request for additional compensation.

**68.**

Parker told Plaintiff that she directed Maya P. Smith, Human Resources Department, to deny Plaintiff's request because Plaintiff incorrectly described her job description and advised Plaintiff to resubmit her paperwork for working out of classification, which Plaintiff emailed to Parker on November 26, 2018.

**69.**

On or about November 27, 2018, Parker acknowledged receipt of Plaintiff's request for working out of classification and agreed to follow up with Plaintiff after meeting with Allen Smith.

**70.**

On or about December 4, 2018, Plaintiff informed Brown that she intended to apply for the vacant Facilities Maintenance Mechanic Senior position posted by the City and requested feedback on her sexual harassment complaint against Derek Ponder.

**71.**

Brown advised Plaintiff to apply for the vacant position but failed to provide Plaintiff with any updated information regarding the City's investigation of her complaint against Ponder.

**72.**

Plaintiff applied for other jobs (Apprentice—Fleet Service, Store Keeper, and Street Maintenance Supervisor) with the City, which complied with her medical restrictions, but the City did not reassign Plaintiff to any of the positions that she applied for.

**73.**

However, Defendant accommodated other similarly-situated

employees such as Lannie Milton, Deborah Fowler, and Kenya Mims who
had requested light duty.

**74.**

On or about December 18, 2018, Plaintiff forwarded her request for
working out of class between March 2016 and November 2018 to Allen Smith
again seeking backpay, a 7% pay increase along with an additional 5% increase
for maintaining a tanker's license.

**75.**

On or about December 18, 2018, Allen Smith told her to contact Human
Resources (Maya P. Smith's) since she should have received her backpay, a 7%
pay raise plus another 5% increase for her tanker's license.

**76.**

When Plaintiff contacted Human Resources, on or about December 20,
2018, Maya P. Smith told her that Allen Smith had denied her request, which
Allen Smith later verbally disputed to Plaintiff.

**77.**

According to Plaintiff, on or about December 26, 2018, Plaintiff met with
Parker who again relayed to Plaintiff that Smith had denied her request for
working out of class.

**78.**

According to Plaintiff, several other employees received backpay and a pay increase between 2017 and 2018 for working out of classification, including Tamika Lewis, Equipment Operator II, James Spencer, Equipment Operator I, and Joseph Banks, Equipment Operator II.

**79.**

During the time of her employment with Defendant, Plaintiff constantly feared further harassment, retaliation, and intimidation by Defendant's management and supervisory officials, including the loss of her job.

**80.**

On or about October 25, 2018, the U.S. Department of Justice (DOJ) issued Plaintiff a Notice of Right-to-Sue (hereinafter "First Right to Sue") with a postmarked date of October 30, 2018 notifying Plaintiff of her rights to file a lawsuit against Defendant *within 90 days of receipt* of the Notice. A true and accurate copy of the First Right- to-Sue Notice and a copy of a postmarked envelope is attached hereto as Exhibit "B," which is made a part hereof by reference.

**81.**

On January 15, 2019, Plaintiff commenced an action in this Court against

Defendant for Discrimination, Hostile Work Environment, and Retaliation under
Title VII of the Civil Rights Act of 1964.  The Case Number was 1:19-cv-00451.

**82.**

Plaintiff did not have the resources to continue to litigate the Defendant, and
on September 26, 2019, Plaintiff had her former counsel move to dismiss the case.

**83.**

Plaintiff had been out of work until December 3, 2019 due to her knee injury.

**84.**

On November 6, 2019, a co-worker called told Plaintiff to tell Plaintiff that
Derek Ponder was saying that Plaintiff was going to return to work on December 3,
2019.

**85.**

The next day, on November 7, 2019, Allen Smith called Plaintiff to ask when
she was returning to work.  Thereafter, Plaintiff received a letter stating that she
had to return to work on December 3, 2019.

**86.**

When Plaintiff returned to work on December 3, 2019, Derek Ponder
harassed Plaintiff by coming into the supervisor's office that she was in.  Derek
Ponder did not speak to any supervisor and did not have any business there.

**87.**

Derek Ponder harassed Plaintiff in the same way periodically until July of 2020.  Even after Plaintiff suing it for sexual harassment, Defendant did not take the appropriate corrective action to timely investigate or properly address Plaintiff's complaints.

**88.**

Rather, Plaintiff's supervisors and coworkers continued to bully and harass her.  For example, Mr. Joseph Banks started harassing Plaintiff about the shoes she wore to work, and Allen Smith told Mary Glenn that Ms. Glenn could not take Plaintiff to get lunch in a City of Atlanta car.

**89.**

On July 4, 2020, Derek Ponder was arrested for rape in Union City, Georgia.

**90.**

Thereafter, the Defendant opened an investigation into Plaintiff's claims. On August 7, 2020, Plaintiff forwarded to the individuals investigating the claims written reports and accounts of the numerous times Derek Ponder harassed Plaintiff.  However, Defendant then closed the investigation without speaking to Plaintiff.

**91**.

The Plaintiff's supervisors and coworkers continued to harass and bully Plaintiff thereafter in retaliation for her reports of sexual harassment.  They

continued to harass Plaintiff in the same way they had been harassing her since she started working there.

**92.**

For example, Allen Smith constantly attempted to have Plaintiff perform work that was outside the restrictions placed on her by the City's Workers Compensation doctor.  They refused to schedule Plaintiff for light duty work. They scheduled doctor's evaluations at a facility not related to the Workers Compensation case and unknown to Plaintiff's Workers Compensation attorney.

**93.**

On January 28, 2021, Plaintiff's counsel sent an *Ante Litem Notice* to the City of Atlanta pursuant to O.C.G.A. §36-33-5(b) regarding (1) Plaintiff's claims of sexual harassment against Ponder (2) the City's failure to properly investigate Plaintiff's complaints or prevent further harassment, and (3) the bullying and retaliation Plaintiff has suffered.

**94.**

Also on January 28, 2021, Plaintiff filed a formal charge of discrimination (hereinafter, "Second EEOC Charge") against Defendant for sex discrimination, hostile work environment, and retaliation in violation of Title VII.   A true and accurate copy of the Second EEOC Charge is attached hereto as Exhibit "C," which is made a part hereof by reference.

**95.**

On March 5, 2021, Allen Smith sent Plaintiff a Memorandum regarding her recovery status because of Covid-19.  Plaintiff had been out of work pursuant to Defendant's Covid-19 policy since Covid was detected in its facility in December 2019.  On January 10, 2021, Plaintiff was diagnosed with Covid-19. The Memo stated, "Therefore, your available compensatory FFRCA hours are 323.8, your sick time hours are 113.18, and your PTO vacation hours are 230.33. We need to hear from you regarding your recovery status and your plans and ability to return to work and which leave hours you would like to use.  Please respond via email to Allen Smith at allsmith@atlantaga.gov and cc Maya Smith at rnpsmith@atlantaga.gov by March 11."

**96.**

Plaintiff responded on March 8, 2021, attaching doctor's notes, medical records, and asking Defendant to use her hours since she couldn't work.

**97.**

Despite this, on April 8, 2021, Defendant, through Allen Smith, sent Plaintiff a notice that it intended to terminate her employment.  The reasons listed were (1) the failure to attend the doctor's evaluation they scheduled without telling her Workers Compensation Attorney and (2) missing work even though (a) she was out because of Covid-19 and (b) she had 27 weeks of sick and vacation time she could have used. Plaintiff and her counsel met with Defendant' agents via Zoom and pointed this out to them.  Defendant ignored the facts and still

terminated Plaintiff's employment.

## 98.

On May 7, 2021, the U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right-to-Sue (hereinafter "First Right to Sue") with a postmarked date of May 7, 2021 notifying Plaintiff of her rights to file a lawsuit against Defendant *within 90 days of receipt* of the Notice. A true and accurate copy of the First Right- to-Sue Notice is attached hereto as Exhibit "D," which is made a part hereof by reference.

## COUNT I – DISCRIMINTION

## 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution And Title VII of the Civil Rights Act of 1964

## 99.

Plaintiff incorporates by reference paragraphs 1 through 98.

## 100.

Plaintiff is female, which is a protected class under Title VII and the Fourteenth Amendment.

## 101.

As early as November 2015, Plaintiff repeatedly complained to Defendant's Department of Human Resources and supervisory personnel that she was being subjected to harassment by her male co-workers and supervisors.

## 102.

Defendant failed to take the appropriate corrective action to address Plaintiff's complaint or prevent any further harassment.

**103.**

Defendant allowed the charged officials to discriminate against Plaintiff based on her sex regarding the terms and conditions of Plaintiff's employment with respect to job assignments, pay raises, and promotions.

**104.**

Plaintiff suffered numerous adverse employment actions as result of Defendant's discriminatory behavior, including the denial of backpay and additional compensation or wages for working of classification and promotion opportunities.

**105.**

Similarly-situated employees outside of Plaintiff's protected class were not treated the same by Defendant.

**106.**

Defendant's intentional acts of discrimination against Plaintiff proximately and legally caused Plaintiff to suffer harm and damages, including, but not limited to, tangible employment action(s).

**107.**

As a result of the Defendant's discriminatory behavior, Plaintiff is

entitled to an award for future pecuniary losses,emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life and other non-

pecuniary damages.

## 108.

Defendant's agents were acting under color of state law and violated

Plainitiff's Constitutional rights.

## 109.

Defendant is responsible for the actions of its agents, who were acting

under the color of state law, because they were acting in accordance with an

official custom or policy of Defendant.  Sexual harassment of and retaliation

against women is rampant in Defendant's Public Works Department, with the

supervisors covering up for the harassers and punishing the victims.

## COUNT II – HOSTILE WORK ENVIRONMENT

## 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution
## And Title VII of the Civil Rights Act of 1964

## 110.

Plaintiff incorporates herein by reference paragraphs through 109 of this

Complaint.

## 111.

Defendant's employees subjected Plaintiff to unwelcome harassment

regarding the terms and conditions (e.g. work assignments) of her

employment.

## 112.

Defendant, through its supervisory agents, unfairly scrutinized Plaintiff's behavior, provided Plaintiff with poor vehicles, equipment and tools, subjected Plaintiff to hazardous  working conditions, and made it more difficult for Plaintiff to perform her job duties, which negatively affected Plaintiff's health resulting in Plaintiff taking time off from work to seek counseling.

## 113.

Plaintiff's supervisors engaged in demeaning and hostile conduct towards Plaintiff during the course of her employmentwith Defendant.

## 114.

Similarly-situated individuals who had not engaged in protected activity were not treated the same by Defendant.

## 115.

Defendant's harassing behavior towards Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment and created a discriminatory and abusive working environment.

## 116.

Plaintiff complained to Defendant, as well as Human Resources, about the hostile work environment, but Plaintiff's complaints were ignored.

**117.**

Defendant failed to take the appropriate corrective action to properly investigate Plaintiff's complaints of a hostile work environment as required by Title VII and 42 USC 1983.

**118.**

As a result of Defendant's unlawful actions, Plaintiff is entitled to monetary and non-monetary damages for severe emotional distress, mental anguish, humiliation, and her economic losses.

**119.**

Defendant's agents were acting under color of state law and violated Plainitiff's Constitutional rights.

**120.**

Defendant is responsible for the actions of its agents, who were acting under the color of state law, because they were acting in accordance with an official custom or policy of Defendant. Sexual harassment of and retaliation against women is rampant in Defendant's Public Works Department, with the supervisors covering up for the harassers and punishing the victims.

## COUNT III – RETALIATION

## 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution And Title VII of the Civil Rights Act of 1964

### 121.

Plaintiff incorporates herein by reference paragraphs 1through 120 of this Complaint.

### 122.

The facts show as early as November 2015, Plaintiff engaged in EEO activity protected under Title VII by complaining to Human Resources about discrimination, harassment, and retaliation.

### 123.

Plaintiff continued to perform her job duties over the following years, but Plaintiff endured constant harassment and retaliation by her supervisors and co-workers.

### 124.

After Plaintiff complained to Defendant's Department of Human Resources and other supervisory personnel, Plaintiff suffered tangible adverse employment actions, including being denied backpay, raises, and promotional opportunities.

### 125.

Defendant's unlawful actions, by and through their employees, constitute retaliation in violation of Title VII and 42 USC 1983.

**126.**

Accordingly, Plaintiff is entitled to an award for future pecuniary losses, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages for the Defendant's intentional acts of discrimination and retaliation.

**127.**

Defendant's agents were acting under color of state law and violated Plainitiff's Constitutional rights.

**128.**

Defendant is responsible for the actions of its agents, who were acting under the color of state law, because they were acting in accordance with an official custom or policy of Defendant.  Sexual harassment of and retaliation against women is rampant in Defendant's Public Works Department, with the supervisors covering up for the harassers and punishing the victims.

## COUNT IV -  VIOLATION OF FLSA

**129.**

Plaintiff incorporates herein by reference paragraphs 1through 128 of this Complaint.

**130.**

Defendant is subject to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

**131.**

Defendant made numerous record keeping errors regarding the hours Plaintiff worked, her working out of class, and vacation and sick time.

**132.**

Defendant's poor record keeping cost the Plaintiff a substantial amount of money over the course of her employment.

**133.**

Defendant's agent purposefully shorted Plaintiff's pay as retaliation for Plaintiff's reports of sexual harassment.

**134.**

Plaintiff was a non-exempt employee under the FLSA.

**135.**

Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant compensation for unpaid minimum and/or overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and expenses of this action, pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, as a result of the violations by the Defendant, Plaintiff respectfully requests the following relief:

A.    Judgment be entered against the Defendant;

B.   Grant a trial by jury;

C.   Award general, compensatory, liquidated, and actual

damages

D.   Award all other damages allowed by law;

E.   Declare the Defendant's conduct complained of herein to

be in violation of the Plaintiff's rights as secured by Title

VII;

F.   Permanently enjoin the Defendant from discriminating and

retaliating against Plaintiff and all all other employees who

have complained of conduct that may have violated Title VII,

as prohibited by Title VII;

G.   Order Defendant to compensate, reimburse, and make Plaintiff

whole for all the benefits she would have received but for

Defendant's illegal actions, including, but not limited to, back

pay,front pay, medical expenses, other employment benefits,

promotions, bonuses, seniority, and interest;

H.   Expunge any adverse employment actions from

Plaintiff's personnel records as a result of Defendant's

unlawful conduct;

I.   Award expenses of litigation, including reasonable attorneys'

fees, reasonable expert witness fees, and other costs of litigation; and

J.     Award punitive damages as provided by law;

K.     Award Plaintiff compensation for unpaid minimum and/or overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and expenses of this action, pursuant to 29 U.S.C. § 216(b).

L.     Grant such other and further relief as the Court shall deem just and proper.

[SIGNATURE ON FOLLOWING PAGE]
Respectfully submitted:

/s/ Kennon Peebles, Jr.
_____
Kennon Peebles, Jr.
Attorney for Plaintiff
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-261-0904
Email: kennon@peebleslaw.net

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, the undersigned counsel certifies that the foregoing

**COMPLAINT FOR DAMAGES** has been prepared in Times New Roman 14

point in compliance with LR 5.1B.


This the 1 day of July, 2021.


                                        /s/ Kennon Peebles, Jr.
                                        _____
                                        Kennon Peebles, Jr.
                                        Attorney for Plaintiff
                                        Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-261-0904
Email: kennon@peebleslaw.net

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2018-04276 |
| | | and EEOC |

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Sylvia A. Fripp** | **(404) 542-5296** | **1967** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7079 Southface Way, Austell, GA 30168** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CITY OF ATLANTA** | **201 - 500** | **(404) 330-6360** |

| Street Address | City, State and ZIP Code |
|---|---|
| **68 Mitchell Street, S.W., Suite 2150 City Hall Towers, Atlanta, GA 30303** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **11-01-2017** | **04-10-2018** |

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with the above-named employer in or around April 2013, as a Crew member. In October 2015, I filed a sexual harassment complaint against a co-worker. In November 2017, I filed an internal harassment complaint that was investigated by Allen Smith. In November 2017, I was transferred to the front office to perform odd jobs and subjected to a hostile environment denied me the ability to perform my job, denied pay for work performed, and denied promotion to a Supervisor position when I was the next person in line. In February 2018, my harassment complaint was reopened.

The reason given for denying me the pay for my work was that I was acting as a Supervisor. No reason was given for denying me the ability to perform my job. The reason given for moving me was the open investigation concerning my complaint against Victor Price, Joe Banks and Horace Scott.

I believe that I am being discriminated against because of my sex (female) and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>APR 1 0 2018<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*<br>EEOC-ATDO |
| **Apr 10, 2018**      *Charging Party Signature*<br>Date | |

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2018-04276 |
| | | and EEOC |

*State or local Agency, if any*

engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| **Apr 12, 2018**          *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |

# EXHIBIT B



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7016 2140 0000 5581 2511

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

October 25, 2018

Ms. Sylvia A. Fripp
7079 Southface Way
Austell, GA 30168

Re: EEOC Charge Against City of Atlanta
      No. 410201804276

Dear Ms. Fripp:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Atlanta District Office, Atlanta, GA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

John M. Gore
Acting Assistant Attorney General
Civil Rights Division

by Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Atlanta District Office, EEOC
     City of Atlanta

**U.S. Department of Justice**

CIVIL FRAUD SECTION LIT

Washington, D.C. 20530
Official Business
Penalty for Private Use $300

US OFFICIAL MAIL
$300 Penalty
For Private Use

Hasler
$06.670
10/30/2018
Mailed From 20530
US POSTAGE
0181126601570

7016 2140 0000 5582 2511

30168935361 R072

# EXHIBIT C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 410-2021-02829 |

and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Sylvia Fripp | 404-542-5296 | 11/25/67 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7079 South Face Way, | Austell, GA 30168 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| City of Atlanta | 15+ | 404-614-6544 |

| Street Address | City, State and ZIP Code |
|---|---|
| 226 Peachtree St, SW | Atlanta, GA 30303 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| EEOC ATDO RECEIVED 01/28/2021 | 15+ | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 10/15/15    Latest: 12/29/20

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I work at the 1150 North Avenue location of the Atlanta Department of Public Works (DOT).

I have already filed one lawsuit against the City of Atlanta (Fripp v. City of Atlanta, United States District Court for the Northern District of Georgia, Case No.: 1:19-cv-00451-CAP) In that case, I told the Court that I was sexually harassed by Derek Ponder from around November of 2015 to January 2019. I also told the Court that instead of taking action against Derek Ponder, my supervisors and the HR Department harassed and retaliated against me by making me work out of my job classification; assigning me faulty vehicles, equipment, and tools; making me work in hazardous conditions; shorting my pay for the work I performed; refusing to assign me to light duty after an injury; and refusing to promote me. I also told the Court that the City failed to conduct an investigation of my complaints and failed to stop Derek Ponder from harassing me.

I did not have the resources to continue to litigate against the City, and on September 26, 2019, I had my attorney move to voluntarily dismiss the case. When I returned to work, the exact same harassment and retaliation continued. Derek Ponder constantly harassed me until he was arrested for rape on July 5, 2020. Instead of taking action against Derek Ponder, my supervisors and the HR Department harassed and retaliated against me by making me work out of my job classification; assigning me faulty vehicles, equipment, and tools; making me work in hazardous conditions; shorting my pay for the work I performed; refusing to assign me to light duty after an injury; and refusing to promote me. This harassment and retaliation continues to this day.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |

1-28-21

# EXHIBIT D

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Sylvia Fripp**<br>**7079 South Face Way**<br>**Austell, GA 30168** | From: | **Atlanta District Office**<br>**100 Alabama Street, S.W.**<br>**Suite 4R30**<br>**Atlanta, GA 30303** |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **410-2021-02829** | **Carmen Bethune,**<br>**Investigator** | **(404) 562-6986** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS of your receipt of this notice</u>**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS of your receipt of this Notice.</u>**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*[signature]*

**Darrell E. Graham,**
**District Director**

May 7, 2021

*(Date Issued)*

cc:
| **Walter Mobley**<br>**HR & EEO Manager**<br>**CITY OF ATLANTA**<br>**68 Mitchell St., S.W.**<br>**City Hall Tower, Suite 2170**<br>**Atlanta, GA 30303** | **Kennon Peebles, Jr.**<br>**3296 Summit Ridge Pkwy.**<br>**Suite 1720**<br>**Duluth, GA 30096** |
|---|---|

Enclosure with EEOC

Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.