IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SYLVIA A. FRIPP<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, GEORGIA<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action File No.<br>1:21-cv-02670-CAP-JKL<br><br>Jury Trial Demanded |

**PLAINTIFF'S THIRD AMENDED COMPLAINT FOR DAMAGES**

NOW COMES the Plaintiff**,** SYLVIA A. FRIPP, through her undersigned counsel of record, and pursuant to the Non-Final Report and Recommendation [Doc 30] which was approved by the Order of the Court [Doc 33], hereby amends her Complaint for Damages against Defendant, CITY OF ATLANTA, GEORGIA (hereinafter, referred to as "Defendant" or the"City") as follows:

**JURISDICTION AND VENUE**

**1.**

This action is brought by the Plaintiffs for damages against Defendant pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

**2.**

Plaintiff invokes this honorable Court's federal question jurisdiction allowing this action to be brought in any judicial district in the state in which the unlawful employment practice was committed, and 28 U.S.C. §§ 1331 and 1343. Plaintiff seeks money damages, declaratory and injunctive relief, expenses of litigation, including reasonable attorney fees and costs, statutory penalties, and punitive damages.

**3.**

Venue is proper in this Court as the facts giving rise to Plaintiff's claims occurred within the area encompassed by the United States District Court for the Northern District of Georgia, and in particular, the Atlanta Division of said Court pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

**4.**

Plaintiff is a citizen of the United States of America. During all times relevant to this action, Plaintiff resided in Cobb County, State of Georgia. Plaintiff submits herself to thejurisdiction of the United States District Court for the Northern District of Georgia for any and all purposes related to or arising from the action within.

**5.**

Defendant is a municipal corporation organized and existing under the laws of State of Georgia with the capacity to sue and be sued; and therefore, subject to personal jurisdiction in Georgia.

**6.**

Defendant was properly served with process by Waiver of Service executed on July 16, 2021, mailed on July 28, 2021, and filed with the Court on August 26, 2021. [Doc 5.]

**7.**

During all times relevant to this action, Plaintiff was employed with Defendant and worked in the City's Department of Public Works/Department of Transportation. The Department of Transportation used to be under the Department of Public Works, but it split off in June of 2020 and now is its own Department.

**8.**

During all times relevant to this action, Defendant met the jurisdictional prerequisites for a claim under Title VII.

**9.**

During the relevant time period, Defendant was an "employer" as defined by Section 701(b) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e(b)) and is thus, covered by, and subject to, the provisions of Title VII, 42 U.S.C. § 2000e et seq., as amended.

**10.**

Defendant, including its supervising personnel, officials,agents, officers, and employees were responsible for all acts complained of herein.

**NATURE OF THE ACTION**

**11.**

This action arises out of events during Plaintiff's terms and conditions of employment with Defendant. Therefore, this action seeks declaratory and injunctive relief, nominal, compensatory, punitive, and liquidated damages, backpay with interest and front pay, if applicable, based upon the Defendant's intentional discriminatory conduct, retaliation, and other unlawful employment practices under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended; and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

**COUNT I – RETALIATION UNDER TITLE VII**

**PART A – PROTECTED ACTIVITY**

**12.**

Plaintiff was employed full-time with Defendant from April 2013 until April 2021 when she was wrongfully terminated.

**13.**

During the relevant time period of Plaintiff's complaint, Plaintiff worked in Defendant's Public Works Department and was assigned to the Motor Pool on or about May 15, 2015 where she often cross-trained in various areas (Concrete, Bridge Shop,Asphalt, and Motor Pool) within the department.

**14.**

In or around November 2015, Plaintiff complained to Defendant's supervisory officials, including Sylvester Alexander, Manager of Highway and Street Department, Garrett T. Bell, Installation Chief, and John Roberts, Bridge Maintenance Coordinator, that she was being sexually harassed by a male co-worker, Derek Ponder. This was Plaintiff's first sexual harassment complaint against Derek Ponder.

**15.**

Plaintiff's first sexual harassment complaint about Derek Ponder were based on Ponder's actions in October 2015. Derek Ponder's actions that led to the first sexual harassment complaint were as follows:

a. Derek Ponder kept asking Plaintiff to go out with him at work.

b. Derek Ponder kept calling Plaintiff on her cell phone asking her to dinner.

c. Plaintiff kept telling Ponder "No". On several occasions Plaintiff told Ponder that she was not interested in him and did not want to interact with him under any circumstance.

d. Plaintiff made it clear to Ponder that she was not single. Ponder replied that he understood, but it would not affect him being involved with Plaintiff, because he was not single either.

e. Plaintiff again told him "NO. I am not interested in you."

f. Ponder refused to take no for an answer, and said Plaintiff would easily crack if he put the pressure toward her.

g. Derek Ponder kept asking Plaintiff to be his "Paymaster". He defined "Paymaster" as a working woman who would give him her whole paycheck.

h. Ponder commented to Plaintiff that he already had one Paymaster and she could be his second.

i. Ponder also liked to use the term "Dip". He defined "Dip" as him bending a woman over a desk or sink so he can have sex with her.

j. Derek Ponder made it clear that he had gotten away with having sex with the Watershed Supervisor's wife.

**16.**

Defendant did not take the appropriate corrective action to timely investigate or properly address Plaintiff's complaints. Plaintiff avoided Ponder when possible but Ponder continued to engage in intimidating behavior towards Plaintiff.

**17.**

The following events happened on January 27, 2016:

While Plaintiff was driving into the parking lot, Derek Ponder pulled up beside her car, gave her a stare that sent chills up her spine, and smiled. On the advice of union steward Joseph Banks, Plaintiff went to Garrett T. Bell, installation chief, to report this matter. Plaintiff informed Mr. Bell that she was tired of Derek Ponder calling her on her cell phone and asking her out to dinner. Mr. Bell then called Luther Foster (acting supervisor for concrete) and Derek Ponder into the office. Derek Ponder reached out and touched Ms. Fripp's left shoulder when he walked in the office. Derek Ponder admitted that he asked Fripp out to dinner. Ponder also stated "I told her how beautiful her lips were." Mr. Bell then told Ms. Fripp that if Derek Ponder ever made another statement to her to go to him directly. Then Mr. Bell told Luther Foster to "write this up as coaching".

**18.**

On February 2, 2016, Derek Ponder filed a written Employee Statement which stated that on January 27, 2016, Ms Fripp refused an order by Chong Hall to take a truck out to Edgewood Ave. This statement was totally false.

**19.**

On February 2, 2016, Luther Foster (Acting Supervisor of Concrete) asked Ms. Plaintiff to work alone with Derek Ponder. This was a few days after Luther Foster was in the meeting in which Plaintiff was complaining about Derek Ponder

sexually harassing her.

**20.**

On February 3, 2016, Plaintiff met with Angela Addison, Deputy Commissioner, Lydia Jamison, Labor Relations Commissioner, Yvonne Yancy, HR Commissioner and complained about Derek Ponder's actions towards her. Plaintiff stated to the three commissioners that Ponder had sexually harassed her and created a hostile work environment.

**21.**

On February 5, 2016, Plaintiff met with Richard Mendoza, Commissioner, and complained about Derek Ponder's actions towards her. Plaintiff told Mr. Mendoza that that Ponder had sexually harassed her and created a hostile work environment. Mr. Mendoza requested thirty days to investigate the matter.

**22.**

On February 5, 2016, Plaintiff also met with Sylvester Alexander, Manager of Highway and Street Department, and inquired about the progress of her sexual harassment complaint against Derek Ponder. Mr. Alexander stated that he spoke to Ms. Paula McGee and forwarded her sexual harassment statement and statements from Mr. Garrett Bell, Luther Foster, and Derek Ponder to Ms. McGee. Plaintiff also asked Mr. Alexander to remove her from any job assignments in the Concrete Department to avoid any interactions with Ponder.

**23.**

On February 15, 2016, Plaintiff met with Sylvester Alexander, Manager of Highway and Street Department, regarding her request to be removed from the Concrete Department. Mr. Alexander stated that he had a lot to deal with, and requested Plaintiff to give him to the end of the week.

**24.**

On February 26, 2016, Plaintiff met with Sylvester Alexander, Manager of Highway and Street Department, regarding her request to be removed from the Concrete Department. Mr. Alexander told Plaintiff to give him until the next Monday.

**25.**

On March 14, 2016, Plaintiff filed a grievance against Ponder alleging she was working in a hostile work environment and continued to be bullied and harassed by Derek Ponder and Luther Foster. This was Plaintiff's third written complaint against Derek Ponder. The third written complaint states as follows: "I have gone through the chain of command and nothing has been done to resolve any of my grievances toward Mr. Derek Ponder. I have requested several times to be removed from the Concrete Dept. Mr. Derek Ponder is influencing Mr. Luther Foster in making numerous false allegations against me working in the Concrete Dept., and they have single [sic] me out. Mr. Luther

Foster continues to try to get me to work alone with Mr. Derek Ponder . . .”

**26.**

On or about March 18, 2016, Michael Dodson reassigned Plaintiff to Defendant’s Bridge Shop where Plaintiff was the only female employee working with approximately seven (7) male employees.

**27.**

On April 29, 2016, Plaintiff injured her knee at work, and took time off from work for treatment, including undergoing surgery, until September 29, 2016.

**28.**

While on leave, on or about May 1, 2016, Plaintiff’s former legal counsel sent an *Ante Litem Notice* to the City of Atlanta pursuant to O.C.G.A. §36-33-5(b) regarding Plaintiff’s claims of sexual harassment against Ponder and the City’s failure to properly investigate Plaintiff’s complaints or prevent further harassment.

**29.**

On or about September 29, 2016, when Plaintiff returned towork on light duty, she was temporarily assigned to the front office in Defendant’s Bridge Shop until she was released to full duty in or around February 2017.

**30.**

In or around March 2017, Plaintiff continued to be assigned to the Bridge

Shop.

**31.**

On or about November 9, 2017, Plaintiff sought counseling from the City's Employee Assistance Program (EAP) due to a hostile work environment.

**32.**

In or around November 20, 2017, Plaintiff complained in writing to Allen Smith that Victor Price had inappropriately touched her face in a sexual manner while working with him on a job. Other workers witnessed Victor Price do this.

**33.**

In or around November 2017, Plaintiff was reassigned from the field to the administrative building at the Bridge Shop where she performed odd jobs and administrative tasks.

**34.**

Plaintiff continued to seek counseling for work-related stress until August 28, 2018.

**35.**

In or around December 2017, Plaintiff aggravated her knee injury and continued to seek treatment from her physician.

**36.**

In or around February 2018, Schyuler L. Brown, Human Resources

Representative, met with Plaintiff in the presence of her Union Representative to discuss her previous complaint of sexual harassment against Derek Ponder and her other complaints of harassment and retaliation against her male supervisors.

**37.**

Defendant's Human Resources Office supervisory officials, improperly disclosed the detailsof her sexual harassment complaint and reason(s) for reassignments to other employees (Gregory Roberts and Tony Turman) without Plaintiff's permission.

**38.**

On or about April 10, 2018, Plaintiff filed a formal charge of discrimination (hereinafter, "First EEOC Charge") against Defendant for sex discrimination, hostile work environment, and retaliation in violation of Title VII. A true and accurate copy of the First EEOC Charge is attached hereto as Exhibit "A," which is made a part hereof by reference.

**39.**

In or around May 2018, Plaintiff filed a second claim for workers' compensation for an injury to her feet that occurred in April 2018 while working in contaminated water.

**40.**

On or about June 14, 2018, Plaintiff learned that Allen Smith intended to

reassign her from the Bridge Shop to the Shape and Gravel Section after Joseph Banks complained that Plaintiff should not be allowed to park at the front of the administrative building.

**41.**

On or about June 15, 2018, Plaintiff had a follow-up appointment with her physician who released Plaintiff to return to work on light duty after an examination of her knee.

**42.**

When Plaintiff returned to work on June 15, 2018, Allen Smith, Transportation Manager, refused to accommodate Plaintiff's request for light duty even though Plaintiff had been previously working in the Bridge Shop's administrative building performing less rigorous tasks.

**43.**

Plaintiff was unable to perform her job duties as an Equipment Operator II without an accommodation for light duty from Defendant.

**44.**

Defendant approved Plaintiff's request for Family and Medical Leave from June 1, 2018 through June 1, 2019.

**45.**

Plaintiff continued to seek treatment for her medical condition(s), including

undergoing a second surgery on or about November 27, 2018, and remained under a doctor's care.

**46.**

On or about October 25, 2018, the U.S. Department of Justice (DOJ) issued Plaintiff a Notice of Right-to-Sue (hereinafter "First Right to Sue") with a postmarked date of October 30, 2018 notifying Plaintiff of her rights to file a lawsuit against Defendant *within 90 days of receipt* of the Notice. A true and accurate copy of the First Right- to-Sue Notice and a copy of a postmarked envelope is attached hereto as Exhibit "B," which is made a part hereof by reference.

**47.**

On January 15, 2019, Plaintiff commenced an action in this Court against Defendant for Discrimination, Hostile Work Environment, and Retaliation under Title VII of the Civil Rights Act of 1964. The Case Number was 1:19-cv-00451.

**48.**

Plaintiff did not have the resources to continue to litigate the Defendant, and on September 26, 2019, Plaintiff had her former counsel move to dismiss the case.

**49.**

Plaintiff had been out of work until December 3, 2019 due to her knee injury.

**50.**

On November 6, 2019, a co-worker called told Plaintiff to tell Plaintiff that

Derek Ponder was saying that Plaintiff was going to return to work on December 3, 2019.

**51.**

The next day, on November 7, 2019, Allen Smith called Plaintiff to ask when she was returning to work. Thereafter, Plaintiff received a letter stating that she had to return to work on December 3, 2019.

**52.**

On December 3, 2019, Sylvia Fripp returned to work and was stationed in the supervisor's office.

**53.**

Later that week, Derek Ponder came in and tried to make small talk with Mr. Marquis Phillip, who is the Area Supervisor of the Concrete Department. Plaintiff asked Mr. Phillip why Derek Ponder was in the office. Mr Phillip said that he didn't know, because he usually didn't talk to Ponder. Plaintiff then told Mr. Phillip that she did not feel comfortable around Ponder, because Ms. Fripp had filed a HR complaint against Ponder for sexual harassment.

**54.**

Derek Ponder harassed Plaintiff in the same way periodically until July of 2020. Even after Plaintiff suing it for sexual harassment, Defendant did not take the appropriate corrective action to timely investigate or properly address

Plaintiff's complaints.

**55.**

On January 28, 2021, Plaintiff's counsel sent an *Ante Litem Notice* to the City of Atlanta pursuant to O.C.G.A. §36-33-5(b) regarding (1) Plaintiff's claims of sexual harassment against Ponder (2) the City's failure to properly investigate Plaintiff's complaints or prevent further harassment, and (3) the bullying and retaliation Plaintiff has suffered.

**56.**

Also on January 28, 2021, Plaintiff filed a formal charge of discrimination (hereinafter, "Second EEOC Charge") against Defendant for sex discrimination, hostile work environment, and retaliation in violation of Title VII. A true and accurate copy of the Second EEOC Charge is attached hereto as Exhibit "C," which is made a part hereof by reference.

**57.**

On May 7, 2021, the U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right-to-Sue (hereinafter "Second Right to Sue") with a postmarked date of May 7, 2021 notifying Plaintiff of her rights to file a lawsuit against Defendant *within 90 days of receipt* of the Notice. A true and accurate copy of the Second Right- to-Sue Notice is attached hereto as Exhibit "D," which is made a part hereof by reference.

**PART B – ACTS OF RETALIATION OCCURRING AFTER AUGUST 1, 2020**

**58.**

On July 4, 2020, Derek Ponder was arrested for rape in Union City, Georgia.

**59.**

Thereafter, the Defendant opened an investigation into Plaintiff's claims. On August 7, 2020, Plaintiff forwarded to the individuals investigating the claims written reports and accounts of the numerous times Derek Ponder harassed Plaintiff.

**60.**

On September 30, 2020, Michael Kirkwood, an attorney who was the Director of the Office of Labor and Employee Relations in the City's Department of Human Resources, emailed Plaintiff requesting an interview with Plaintiff regarding the Ponder investigation. The Office of Labor and Employee Relations is the office in the HR Department that is responsible for investigating employee claims of sexual harassment.

**61.**

On October 1, 2020, the Plaintiff's undersigned counsel emailed Mr. Kirkwood to notify him of my representation of Plaintiff regarding her present claims of sexual harassment and retaliation against Defendant. Mr. Kirkwood and the undersigned corresponded by email regarding setting up Plaintiff's interview.

**62.**

In January 2021, Michael Kirkwood emailed Plaintiff that the City had closed the investigation into Derek Ponder's sexual harassment of Plaintiff. It did this without interviewing Plaintiff.

**63.**

From December of 2019 until Plaintiff was wrongfully terminated in 2021, Defendant's agents, including Transportation Director Allen Smith and Maya Smith of the Department of Human Resources constantly attempted to interfere with Plaintiff's Workers Compensation case. Allen Smith would have Plaintiff perform work that was outside the restrictions placed on her by the City's Workers Compensation doctor. He also refused to schedule Plaintiff for light duty work. Maya Smith should not have been involved in Plaintiff's Workers Compensation case, because Workers Compensation cases are managed by the City's Office of Risk Management, not the HR Department.

**64.**

Allen Smith and Maya Smith also, along with other agents of Defendant, scheduled a medical evaluation (Fitness for Duty Exam) at a facility not related to the Workers Compensation case and unknown to Plaintiff's Workers Compensation attorney.

**65.**

Defendant's agent in its workers compensation department, Deshonda

Howard, has in fact testified in Plaintiff's Workers Compensation case that the type of doctor's evaluation that Plaintiff failed to attend should not have been scheduled for someone treating under workers compensation.

**66.**

On January 28, 2021, Plaintiff filed a formal charge of discrimination (hereinafter, "Second EEOC Charge") against Defendant for sex discrimination, hostile work environment, and retaliation in violation of Title VII.

**67.**

Pursuant to their policy, the EEOC forwarded the Second EEOC Charge to the City of Atlanta' HR Department within ten days of receipt.

**68.**

After the City of Atlanta's Department of Human Resources received a copy of the Second EEOC Charge, it was forwarded to Michael Kirkwood. As above stated, Michael Kirkwood was, at the time, was the Director of the office responsible for dealing with employee sexual harassment and retaliation complaints.

**69.**

A copy of the Second EEOC Complaint was also forwarded to Calvin Blackburn, who was the time Deputy Division Chief in the Labor and Employment division in the Litigation Section of the City of Atlanta's law department. Calvin Blackburn's job at the time was to defend the City of Atlanta against cases such as

the present case.

**70.**

In Allen Smith's deposition in Plaintiff's Workers Compensation case, Allen Smith testified that in February of 2021, Allen Smith and Maya Smith met with Michael Kirkwood and Calvin Blackburn to discuss Plaintiff. Allen Smith testified that he thought Michael Kirkwood may have called the meeting. This meeting ultimately resulted in the decision to terminate Plaintiff's employment.

**71.**

The fact that Michael Kirkwood and Calvin Blackburn were involved in the meeting at all indicates that the meeting was as a result of Plaintiff's sexual harassment and retaliation claims (the present case) and not her Workers Compensation claim. This is because (1) Workers Compensation claims are managed by the Office of Risk Management, not Human Resources; (2) Michael Kirkwood had corresponded with the undersigned regarding the present case (in its prefiling stage); and (3) Calvin Blackburn's specific job at the time was to defend the City against cases such as the present case.

**72.**

On March 5, 2021, Allen Smith sent Plaintiff a Memorandum regarding her recovery status because of Covid-19. Plaintiff had been out of work pursuant to Defendant's Covid-19 policy since Covid was detected in its facility in December 2019. On January 10, 2021, Plaintiff was diagnosed with Covid-19. The Memo

stated, "Therefore, your available compensatory FFRCA hours are 323.8, your sick time hours are 113.18, and your PTO vacation hours are 230.33. We need to hear from you regarding your recovery status and your plans and ability to return to work and which leave hours you would like to use. Please respond via email to Allen Smith at allsmith@atlantaga.gov and cc Maya Smith at rnpsmith@atlantaga.gov by March 11."

**73.**

Plaintiff responded on March 8, 2021, attaching doctor's notes, medical records, and asking Defendant to use her hours since she couldn't work.

**74.**

In Allen Smith's deposition in Plaintiff's Workers Compensation case, Allen Smith testified that in March 2021, Allen Smith and Maya Smith had another meeting with Michael Kirkwood and Calvin Blackburn to discuss the best way to terminate Plaintiff.

**75.**

On April 8, 2021, Defendant, through Allen Smith, sent Plaintiff a Notice of Proposed Adverse Action, stating that it intended to terminate her employment. The reasons listed were (1) the failure to attend the doctor's evaluation they scheduled without telling her Workers Compensation Attorney and (2) missing work even though (a) she was out because of Covid-19 and (b) she had 3 weeks of sick and vacation time she could have used.

**76.**

In Allen Smith's deposition in Plaintiff's Workers Compensation case, Allen Smith testified that the Notice of Proposed Adverse Action was the result of the meetings between himself, Maya Smith, Michael Kirkwood and Calvin Blackburn. However, he also admitted that he was the person who ultimately made the decision to terminate Plaintiff's employment.

**77.**

On April 13, 2021, Plaintiff filed a grievance against Allen Smith. Prior to filing the grievance but after receiving the Notice of Proposed Adverse Action, Plaintiff told Allen Smith that she had filed the Second EEOC Charge, that she was going to sue the City and to direct any further communication to either her Workers Compensation attorney or the undersigned.

**78.**

The Notice of Proposed Adverse Action was filled with false statements, including:

a. Ms. Fripp was released to full duty from workers comp on 11/1/2019 without any restrictions and scheduled to return to work on 11/4/2019; however, she elected to remain at home.

b. The [Workers Compensation] physician refused to see Ms. Fripp and agreed that she should return to work full duty without restrictions.

c. Dr. York has concluded the current condition Ms. Fripp has is unrelated

to work.

d. It was determined that the FCE [Functional Capabilities Exam] was ordered by Ms. Fripp's WC attorneys and not the city's WC doctors.

**79.**

Defendant's agent in its workers compensation department, Deshonda Howard, has in fact testified in Plaintiff's Workers Compensation case that the type of doctor's evaluation that Plaintiff failed to attend should not have been scheduled for someone treating under workers compensation.

**80.**

In Allen Smith's deposition in Plaintiff's Workers Compensation case, Allen Smith testified that he had no personal knowledge of most of the facts stated in the April 8, 2021 notice of intention to terminate Plaintiff's employment. He also admitted that he did not verify the accuracy of the grounds for termination.

**81.**

On April 21, 2021, Plaintiff and her undersigned counsel met with Josh Rowan, who was Transportation Commissioner at the time, via Zoom and pointed the out to him that the allegations contained in the notice of intention to terminate employment were false.

**82.**

However, on April 28, 2021, Allen Smith ignored the facts and still terminated Plaintiff's employment. Terminating Plaintiff's employment based on

false allegations had been Allen Smith, Maya Smith, Michael Kirkwood and Calvin Blackburn's plan all along.

**PART C – SUMMARY OF RETALIATION CLAIM**

**83.**

Plaintiff has made (1) internal complaints about sexual harassment; (2) two different EEOC complaints about sexual harassment, and (3) filed a lawsuit about sexual harassment, which are statutorily protected activity.

**84.**

After Plaintiff filed the Second EEOC Complaint on January 28, 2021, Defendant's agents Allen Smith, Maya Smith, Michael Kirkwood and Calvin Blackburn met in February 2021 and March 2021 to plan the best way to terminate Plaintiff's employment. The result of these meetings was the Notice of Proposed Adverse Action.

**85.**

Defendant's unlawful actions, by and through their employees, constitute retaliation in violation of Title VII.

**86.**

Accordingly, Plaintiff is entitled to an award for future pecuniary losses, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages for the Defendant's intentional acts of discrimination and

retaliation.

**COUNT II - VIOLATION OF FLSA**

**87.**

Defendant, as a city, is subject to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

**88.**

Defendant made numerous record-keeping errors regarding the hours Plaintiff worked.

**89.**

Defendant's poor record keeping cost the Plaintiff a substantial amount of money over the course of her employment. Specifically, this led to Plaintiff not being paid time-and-a half for overtime for some weeks that Plaintiff worked over 40 hours. This is not a claim of a stand-alone violation of record keeping duties.

**90.**

"[T]he requirements to state a claim of a FLSA violation are quite straightforward." Sec'y of Labor v. Labbe, 319 F. App'x 761, 763 (11th Cir. 2008). To state a claim under the FLSA for unpaid wages, an employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages. See Morgan v. Family Dollar Stores, 551 F.3d 1233,1277 n.68 (11th Cir. 2008). Additionally, "[t]here is no requirement that the Plaintiff explicitly

state the amount of damage, but only that the Plaintiff worked in excess of forty hours a week and was not paid overtime wages." Ramos v. Aventura Limousine & Transp. Serv., Inc., No. 12-21693-CIV, 2012 WL 3834962, at *2 (S.D. Fla. Sept. 4, 2012).

**91.**

Defendant's poor record keeping was willful triggering a three-year statute of limitations.

**92.**

"Although the ordinary statute of limitations in cases brought under the FLSA is two years, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. 29 U.S.C § 255(a). A willful violation may be found when the employer "disregarded the very `possibility' that it was violating the statute." Alvarez v. IBP, Inc., 339 F.3d 894, 908-09 (9th Cir.2003) (citing Herman, 172 F.3d at 141). The determination of willfulness is "a mixed question of law and fact." Id. at 908.

Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306 (11th Cir. 2007)

**93.**

Plaintiff was a non-exempt employee under the FLSA.

**94.**

Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant compensation for unpaid overtime wages; an additional

equal amount as liquidated damages; and reasonable attorneys' fees, costs and expenses of this action, pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, as a result of the violations by the Defendant,Plaintiff respectfully requests the following relief:

A. Judgment be entered against the Defendant;

B. Grant a trial by jury;

C. Award general, compensatory, liquidated, and actual damages

D. Award all other damages allowed by law;

E. Declare the Defendant's conduct complained of herein to be in violation of the Plaintiff'srights as secured by Title VII;

F. Permanently enjoin the Defendant from discriminating and retaliating against Plaintiff and all other employees who have complained of conduct that may have violated Title VII, as prohibited by Title VII;

G. Order Defendant to compensate, reimburse, and make Plaintiff whole for all the benefits she would have received but for Defendant's illegal actions, including, but not limited to, back pay,front pay, medical expenses, other employment benefits,

promotions, bonuses, seniority, and interest;

H. Expunge any adverse employment actions from Plaintiff's personnel records as a result of Defendant's unlawful conduct;

I. Award expenses of litigation, including reasonable attorneys' fees, reasonable expert witness fees,and other costs of litigation; and

J. Award punitive damages as provided by law;

K. Award Plaintiff compensation for unpaid minimum and/or overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees, costs and expenses of this action, pursuant to 29 U.S.C. § 216(b); and

L. Grant such other and further relief as the Court shall deem just and proper.

Respectfully submitted:

/s/ Kennon Peebles, Jr.

Kennon Peebles, Jr.
Attorney for Plaintiff
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-261-0904
Email: kennon@peebleslaw.net

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel certifies thatthe foregoing **THIRD AMENDED COMPLAINT FOR DAMAGES** has been prepared in Times New Roman 14 point in compliance with LR 5.1B.

This the 27 day of January, 2023.

/s/ Kennon Peebles, Jr.

______________________________

Kennon Peebles, Jr.
Attorney for Plaintiff
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-261-0904
Email: kennon@peebleslaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served upon the Defendant a copy of the foregoing document on Defendant by email to the following:

Deitra S. Jones, Esq. (jonesdei@gtlaw.com)

This the 27 day of January, 2023.

/s/ Kennon Peebles, Jr.

______________________________

Kennon Peebles, Jr.
Attorney for Plaintiff
Georgia Bar No.: 570151

3296 Summit Ridge Pkwy
Suite 1720
Duluth, Georgia 30096
Tel. 470-395-4427
Fax 678-261-0904
Email: kennon@peebleslaw.net