UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SYLVIA A. FRIPP,

                Plaintiff,

       v.

CITY OF ATLANTA, GEORGIA,

                Defendant.

CIVIL ACTION NO.

1:21-CV-2670-CAP-JKL

## O R D E R

The plaintiff filed this action on July 2, 2021, asserting claims against her former employer [Doc. No. 1]. The plaintiff has amended her complaint multiple times; the operative pleading in this case is the Third Amended Complaint [Doc. No. 43]. The defendant filed a motion for summary judgment [Doc. No. 465. The Magistrate Judge has issued a report and recommendation ("R&R"), which recommends that the motion for summary judgment be granted [Doc. No. 75]. The plaintiff has filed objections to the R&R [Doc. No. 77]. The matter is now ripe for consideration.

## I.    Background

No objections were made to the factual background set out by the Magistrate Judge; therefore, the court incorporates the R&R's factual background as fully set forth herein.

In February 2013, the plaintiff began work in the City's sanitation department as an equipment operator. Def.'s Statemt. of Undisputed Material Facts ("DSUMF" ¶ 5 [Doc. No. 65-2; Dep. of Pl. [Doc. No. 66-1] at 91-92.) In 2015, she was transferred to the defendant's Department of Transportation ("DOT"), where she worked as an Equipment Operator II in Defendant's North Avenue "bridge shop," which was responsible for helping maintain sidewalks, roads, and bridges. DSUMF ¶¶ 6, 8, 9; Pl.'s Resp. to DSUMF ("R-DSUMF") ¶ 6 [Doc. No. 71-2]; Pl.'s Statemt. of Additional Material Facts ("PSAMF") ¶ 1 [Doc. No. 71-3]. In that role, she worked both in an office setting and in the field, transporting trucks and assisting with asphalt and concrete. DSUMF ¶ 10. Allen Smith was her supervisor at all times relevant to this case. DSUMF ¶ 13.

In November 2017, the plaintiff complained to Mr. Smith that a co-worker had sexually harassed her in the bridge shop. Dep. of Allen Smith [Doc. No. 67-1] at 33. Mr. Smith investigated the complaint but was unable to substantiate the plaintiff's claims. DSUMF ¶ 18. Still, because the plaintiff felt that she had been the victim of harassment, Mr. Smith transferred her from

the bridge shop to the so-called "administration building." *Id.*; Allen Smith Dep. at 37. According to Mr. Smith, the City "wanted to place [Plaintiff] in a different environment, just to give her space from anything she may have been perceiving as harassment or an uncomfortable situation." Id. For the remainder of the plaintiff's tenure with the City, she mostly worked out of the administration building. Pl. Dep. at 100-02; DSUMF ¶¶ 11, 17. The plaintiff conceded that she "didn't have any problem with" working in the administrative building, which she explained "wasn't stressful." DSUMF ¶¶ 20, 21.

On April 10, 2018, the plaintiff filed a charge of discrimination with the EEOC (the "2018 Charge"). DSUMF ¶ 15. In it, she alleged that she had filed a sexual harassment complaint against a co-worker in October 2015, again in 2017, and was then "transferred to the front office to perform odd jobs and subjected to a hostile environment when [she] was denied the ability o perform her job, denied pay for work performed, and denied promotion to a supervisor position." DSUMF ¶ 15, 16. Based on that charge and its underlying facts, the plaintiff filed a lawsuit against the defendant in this court in January 2019, asserting claims for sex discrimination, hostile work environment, and retaliation in violation of Title VII. DSUMF ¶ 22. The plaintiff voluntarily dismissed that action on September 26, 2019. DSUMF ¶ 23.

For several years, the plaintiff had problems with her health, including issues associated with a workplace injury. The details of the injury and her treatment are not clear. Even so, it appears that in 2019, beginning around late summer and continuing into the fall of that year, the plaintiff was absent from work and was receiving worker's compensation benefits. *See* Dep. of Maya Smith Ex. 12 [Doc. No. 70-13]; PSAMF ¶¶ 11-13. In October 2019, her workers' compensation doctor, Michael York, M.D., released her to return to work on regular duty without any limitations. [Doc. No 65-49 at 8] (return to work form).] The plaintiff did not return to work as expected, however. Dep. of Maya Smith Ex. 14 [Doc. No. 70-15] (Nov. 27, 2019 letter to plaintiff).) On November 27, 2019, Nia Parker, the Human Resources Director for the City's Department of Public Works, wrote the plaintiff a letter warning her that if she did not return to work by December 3, 2019, her job would be deemed abandoned. *Id.*; *see also* PSAMF ¶ 15.

The plaintiff returned to work on December 3 as instructed. Pl. Dep. at 116. But even though she had been cleared to return with no restrictions, the plaintiff arrived to work wearing a leg brace and using a cane. DSUMF ¶ 53. According to Maya Smith, a Human Resources manager, because the plaintiff had been released to return to work without restrictions by her doctor, but was still claiming that, due to a personal injury, she could not perform the work as

an equipment operator, her department recommended that she attend a fitness-for-duty exam to determine if she was capable of performing the duties of her position. DSUMF ¶ 544; Dep. of Maya Smith [Doc. No. 70-1] at 7-8, 32. A fitness-for-duty exam was therefore scheduled for January 13, 2020. *See id.* at Ex. 37 [Doc. 70-38].

Meanwhile, on January 2, 2020, the plaintiff filed an internal grievance with the City, alleging that a co-worker, Derek Ponder, sexually harassed her. DSUMF ¶ 24; PSAMF ¶ 17. On January 6, 2020, Mr. (Allen) Smith emailed the grievance to Ms. Parker. PSAMF ¶ 18; Dep. of Maya Smith at 20, Ex. 6 at 22-24 (email and grievance).) That same day, Ms. Parker forwarded the grievance to James Merriweather, the Director of the City's Office of Labor and Employee Relations ("OLER"), and Ms. (Maya) Smith, writing that she would "like to discuss next steps if the claims are proven to be unfounded as this is one of numerous complaints made by this employee that have not been substantiated." PSAMF ¶ 19; Dep. of Maya Smith  Ex. 6 [Doc. 70-7] at 21; Dep. of Michael Derrick Kirkwood [Doc. No. 69-1] at 23. According to Ms. Smith, however, no plan was ever implemented to "stop" the plaintiff from complaining about sexual harassment or related issues. Dep. of Maya Smith at 18-19. On January 7, 2020, Schyuler Brown, an employee relations

specialist in OLER, emailed Plaintiff that OLER had received her complaint and would contact her for additional information if necessary. DSUMF ¶ 25.

On January 8, 2020, the City's Director of Enterprise Risk Management, Jerry DeLoach, emailed Ms. Smith and DeShonda Howard, who worked in risk management for the City and handled workers' compensation claims, to ask them to cancel the fitness-for-duty exam examination scheduled for January 13 because the plaintiff had just visited with Dr. York, who was expected to provide notes from that visit. Dep of Maya Smith Ex. 18 [Doc. No. 70-19] (Jan. 8, 2020 email thread). Ms. Smith confirmed receipt of Mr. DeLoach's email, and the fitness-for-duty exam did not go forward at that time. Dep. of Maya Smith Ex. 18 [Doc. No. 70-19], Ex. 37 [Doc. No. 70-38].

Following Dr. York's January 8 examination, he opined that the plaintiff remained at maximum medical improvement following previous work-related injuries and that she could return to work without restrictions on January 9, 2020. Dep. of Maya Smith Ex. 20 [Doc. 70-21] at 1. Dr. York noted, however, that the plaintiff had knee problems that were not related to any workplace injury and recommended that she undergo left knee replacement surgery through her own medical insurance. *Id.* Dr. York also noted that the plaintiff had brought in a functional capacity evaluation that her attorney had ordered. *Id.* Dr. York opined, under the heading "current work status," that the plaintiff

"[m]ay return to light duty today based on the functional capacity recommendations] today." *Id.* The record is murky about what happened next, but it is undisputed that on January 28, 2020, Dr. York updated his opinion on the plaintiff's work status to indicate that she could return to work with no restrictions. PSAMF ¶ 24.

On February 4, 2020, Ms. Smith notified Plaintiff that she was required to report for a fitness-for-duty examination on February 6, 2020, and that she could complete a request for a disability accommodation (and submit it within ten business days). DSUMF ¶ 56; PSAMF ¶ 25. The plaintiff did not attend her fitness-for-duty exam or return any completed disability paperwork. DSUMF ¶¶ 57, 58; R-DSUMF ¶ 58.

On March 25, 2020, Mr. (Allen) Smith sent Ms. (Maya) Smith a draft notice of proposed adverse action, in which he recommended the plaintiff's dismissal due to her failure to attend the fitness-for-duty exam. PSAMF ¶ 31. The termination did not proceed at that point, however, because Michael Kirkwood, who had succeeded Mr. Merriweather as the Director of OLER, discovered that the plaintiff's January 2, 2020 complaint about Mr. Ponder was still pending and needed to be resolved before the City could proceed with the plaintiff's dismissal. Dep. of Michael Kirkwood at 8, 23, 47-48.

Mr. Kirkwood attempted, on multiple occasions, to schedule an interview with the plaintiff and her counsel, Keenon Peebles, in October 2020; however, the plaintiff and Mr. Peebles stopped communicating with Mr. Kirkwood, so no interview occurred. DSUMF ¶¶ 27, 29, 30, 319; Pl. Dep. Ex. 15 [Doc. 66-15]. Mr. Kirkwood ultimately determined that the plaintiff's allegations of sexual harassment were unsubstantiated (DSUMF ¶ 32), and on January 26, 2021, advised the plaintiff and Mr. Peebles that the investigation had been closed. Pl. Dep. Ex. 15 [Doc. 66- 15 at 5-6].

On January 28, 2021, the plaintiff filed a charge of discrimination with the EEOC (the "2021 Charge"), alleging claims for sex discrimination and retaliation in violation of Title VII, based on Mr. Ponder's alleged harassment from September 2019 through July 5, 2020. DSUMF ¶ 33.

Five days later, on February 2, 2021, Ms. (Maya) Smith wrote an email to Jennifer Hicks, the City's Director of Human Resources, stating, "The department would like to move forward with the termination of Sylvia Fripp. We have been dealing with her for some time." PSAMF ¶ 36; Dep. of Jennifer Hicks [Doc. No. 68-1] at 5-6. There is no indication that Ms. Smith was aware that the plaintiff had filed the 2021 Charge.

In the meantime, the plaintiff was absent from work from December 2020 through March 2021. DSUMF ¶ 60; R-DSUMF ¶ 60; PSAMF ¶ 37. City

employees who anticipated being absent for an extended period of time must apply for leave under the Family Medical Leave Act ("FMLA") to protect their jobs. Dep. of Maya Smith at 65; Dep. of Allen Smith at 67; Dep. of Jennifer Hicks at 23. As a result, on January 29, 2021, Myra Domineck, a Human Resources employee, emailed the plaintiff paperwork so that she (the plaintiff) could request leave under the FMLA. [Doc. No. 65-59 at 5]. Relevantly, an employee who does not return FMLA documents is considered to be out on unapproved leave. Dep. of Maya Smith at 51. So, while an employee can use accrued leave time in conjunction with FMLA leave, an employee's job will not be protected without approved FMLA leave. Dep. of Allen Smith at 71, 85; Dep. of Jennifer Hicks at 23-24; Dep. of Michael Kirkwood at 53.

On March 5, 2021, Mr. (Allen) Smith sent the plaintiff a memorandum, informing her that she had 323.80 hours of "FFCRA" leave (that is, leave under the Families First Coronavirus Response Act), 113.18 hours of sick leave, and 230.33 hours of paid time off available to use. Dep. of Allen Smith Ex. 15 [Doc. No. 67-16]. Mr. Smith instructed the plaintiff to advise him and Ms. (Maya) Smith by March 11, 2021, "regarding [her] recovery status and [her] plans and ability to return to work and which leave hours [she] would like to use." *Id*. He also reminded the plaintiff that she would need to contact him to request an accommodation, if one was needed. *Id*.

On March 8, 2021, the plaintiff emailed Mr. Smith a physician's note stating that she should be placed on medical leave from January 14, 2021 through July 1, 2021. DSUMF ¶ 62; PSAMF ¶ 39. In the transmittal email, the plaintiff also indicated she was "aware of FFCRA that expires March 31, 2021," and asked to use her "328 hours and after that my sick leave hours due to my underlying medical conditions." R-DSUMF ¶ 62; PSAMF ¶ 38.

On April 8, 2021, Mr. Smith emailed the plaintiff a "Notice of Proposed Adverse Action," advising that the plaintiff's employment be terminated effective April 22, 2021. DSUMF ¶ 66; PSAMF ¶ 42; Pl. Dep. 15 [Doc. No. 66-16] (notice).) As grounds for the proposal, the notice read as follows:

> The department seeks to dismiss Sylvia Fripp, in part, because she was insubordinate, in violation of [Atlanta Code of Ordinance Section] 114-528(b)(3). Ms. Fripp was released to full duty from worker's comp on 11/1/2019 without any restrictions and scheduled to return to work on 11/4/2019; however, she elected to remain at home. Workers' Compensation (WC) Manager, DeShonda Howard informed HR and Transportation Manager, Allen Smith[,] that the city's WC Attorney, Todd Brooks requested Ms. Fripp remain on WC until 11/22/2019 after her appointment with a WC physician. The physician refused to see Ms. Fripp and agreed that she should return to work full duty without restrictions. Ms. Howard informed HR and management on 11/26/2021 [sic11] that Ms. Fripp was released to full duty by both WC doctors and that her office would send a 10-day notice to return to work. Ms. Fripp returned to work on 12/3/2019 wearing a leg brace and using a cane while claiming she was unable to perform the essential functions of her job as an Equipment Operator II. She has refused to perform any functions in that capacity. Because of her refusal and claim of inability to perform

the essential functions, HR worked with the Benefits department
to coordinate a Fitness for Duty Exam (FFD) with Caduceus USA
that was scheduled for 1/13/2020. Ms. Smith contacted Ms. Fripp
on 1/8/2021 to inform her about the pending appointment and she
stated she was currently at the doctor receiving a fitness for duty
test through WC. Ms. Smith was unaware of any test other than
the one that was coordinated through the city's Benefits
Department in conjunction with Caduceus. Ms. Smith also
shared with her that any test results from her personal doctor
would not be used to determine her fit[ness] for duty; however,
she could provide them as supporting documents during her
appointment with the physician at Caduceus to assist him with
his decision. She stated that the doctor performing the test was
Dr. York, the city's WC doctor. During the conversation, Ms.
Fripp told Ms. Smith to communicate the information pertaining
to the scheduled FFD with her attorney. As a result of the
conversation, HR contacted Director of Enterprise and Risk
Management, Jerry Deloach and Ms. Howard. The FFD was
cancelled at their request until they were received and were able
to review the notes from Ms. Fripp's visit. On 1/24/2020, Ms.
Howard informed HR of the following, "Dr. York has concluded
the current condition Ms. Fripp has is unrelated to work. He
confirmed that Ms. Fripp has a condition that will require a total
knee replacement but again, it is non work related and should be
covered under her personal health insurance. The FCE
(Functional Capabilities Exam) was not addressed. The reason
for this is, he did not order it; therefore, he will not acknowledge
it." It was determined that the FCE was ordered by Ms. Fripp's
WC Attorney and not the city's WC doctors. A second FFD was
scheduled with Caduceus for 2/6/2020. On 2/4/2020, HR Manager
Maya Smith and Installation Chief Todd Miles met with Ms.
Fripp to explain that the FCE was ordered because of her
admitted inability to perform the essential functions of an
Equipment Operator 11. She was also provided with ADA
accommodation request documents due to her personal injury.
The documents were due back to HR by 2/18/2020. Ms. Fripp did
not submit the ADA accommodation request documents. She also
violated 114-528(b)(16) as she refused to attend the Fitness for
Duty assessment as required and explained to her. Ms. Fripp has

been out of the office since 12/29/2021. Human Resources sent
FMLA documents to Ms. Fripp on January 29, 2021; however, the
forms were not returned. Regarding her absence, Allen Smith
sent a recovery status memo to Ms. Fripp on March 5, 2021,
inquiring about her return to work as well as informing her of her
ability to request an ADA accommodation. Ms. Fripp responded
to the memo's deadline on March 11, 2021, by providing a doctor's
note stating she would be re-evaluated on 3/26/2021 and would
need to remain out of work until 7/1/2021 without providing
completed FMLA paperwork. To date, she has not requested a
reasonable accommodation or returned any FMLA documents to
support her inability to report to work and is in violation of 114-
528(b)(8) Absence without official leave.

*Id.* The notice was signed by Mr. Smith as the plaintiff's supervisor, as well as

by Department Head Barrington Brown and Commissioner Josh Rowan. *Id.*

On April 27, 2021, the defendant issued the plaintiff a Notice of Final Adverse

Action. DSUMF ¶ 67. According to the notice, the plaintiff was terminated for

(1) "failure to carry out an official directive or refusal to carry out the lawful,

reasonable directions given by a superior or other acts of insubordination" in

violation of City of Atlanta Code of Ordinances Section 114-528(b)(3); (2)

"absence without official leave" in violation of City of Atlanta Code of

Ordinances Section 114-528(b)(8); and (3) "the refusal, when so directed, to be

examined by a licensed physician designated by the City" in violation of City

of Atlanta Code of Ordinances Section 114-528(b)(16). Pl. Dep. Ex. 17 [Doc. No.

66-17] (final notice). Mr. Smith was the sole decisionmaker with respect to the

plaintiff's termination. DSUMF ¶ 69. He was not aware of the plaintiff's 2018

Charge, her 2019 lawsuit, or her 2021 Charge at the time he made the decision to terminate the plaintiff's employment. DSUMF ¶ 70.

## II.    Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the Magistrate Judge's R&R.  28 U.S.C. § 636(b)(1); *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010).  A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(2) (requiring the objecting party's objections to be "specific").  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).  The district judge reviews legal conclusions de novo, even in the absence of an objection.  *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).  "[T]he district court will review those portions of the R & R that are not objected [to] under a clearly erroneous standard." *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, L.L.C.,* 199 F.Supp.2d 1271, 1276 (M.D. Fla. 2001).

Since the underlying motion in this case is a motion for summary judgment, the court will also set forth the applicable legal analysis for

resolving that motion. Rule 56(a) of the Federal Rules of Civil Procedure authorizes summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson*, 74 F.3d at 1090. Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When ruling on a motion for summary judgment, it is not the court's function to decide issues of material fact but to decide only whether there is such an issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251

(1986). The applicable substantive law will identify those facts that are material. *Id.* at 247. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *Id.* Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* "Genuine" factual issues must have a real basis in the record. *See Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted).

## III. Analysis

### A. FLSA Overtime Claim

Because the plaintiff failed to oppose the defendant's motion for summary judgment as to her FLSA overtime claim, the magistrate judge concluded that the plaintiff has abandoned that claim. R&R at 19. The plaintiff filed no objection to this conclusion.

This court finds no error in the magistrate judge's conclusion that the plaintiff's failure to oppose the motion for summary judgment as to her FLSA overtime claim results in her abandonment of the claim. Accordingly, the defendant is entitled to summary judgment as to Count II of the Third Amended Complaint.

## B. Title VII Retaliation

The magistrate judge found that the plaintiff failed to adduce direct evidence of retaliation. Therefore, he applied the *McDonnell Douglas* framework for analyzing retaliation based on circumstantial evidence. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Ultimately, the magistrate judge found that the plaintiff could not establish a prima facie case of retaliation, and even if she could, she failed to demonstrate that the defendant's legitimate non-retaliatory reasons for terminating the plaintiff's employer were pretext for employment.

### 1. Direct Evidence

The plaintiff argues that Judge Larkins incorrectly determined that she presented no direct evidence of retaliatory intent. "Direct evidence of [retaliation] is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption. As [Eleventh Circuit] precedent illustrates, direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to [retaliate] on the basis of some impermissible factor." *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (quoting *Schoenfeld v. Babbitt*, 168 F. 3d 1257, 1266 (11th Cir. 1999) (citations and quotations omitted)).

The evidence relied on by Plaintiff consists of two emails by Mr. Allen Smith and the notice of proposed adverse action. Obj. at 2-4. While Plaintiff is correct that in each document Mr. Allen Smith indicates that the plaintiff has made claims of sexual harassment when assigned to various job locations, there is nothing to indicate that these complaints are the reason for the decision to terminate the plaintiff. *See* Exs. 7, 9, 28 to the Dep. of Maya Smith [Doc. Nos. 70-8 at 2, 70-9 at 19, 70-29 at 1]. Rather, these documents demonstrate the efforts by the defendant to remove the plaintiff from job locations where she has perceived harassment and place her in an environment where she does not perceive such harassment. Accordingly, the magistrate judge is correct in his conclusion that there is no direct evidence of retaliatory intent. As such Judge Larkins correctly moved to the *McDonnell Douglas* burden shifting analysis.

### 2. *McDonnell Douglas* Analysis

### a. *Prima Facie Case of Retaliation*

The plaintiff objects to a number of the magistrate judge's conclusions within the analysis of the prima facie case of retaliation including what amounted to adverse employment actions and whether there was evidence of causal connections between those adverse actions and any protected activity by the plaintiff. Obj. at 4-13. As set forth below however, this court finds that

the magistrate judge is correct in concluding that the defendant set forth legitimate non-retaliatory reasons for her discharge[1] and the plaintiff failed to adduce evidence of pretext. Therefore, even if the plaintiff could establish a prima face case of retaliation, the defendant is still entitled to summary judgment on the claim. Accordingly, this court finds for purposes of adjudicating the defendant's motion for summary judgment that the plaintiff carried her burden of showing a prima facie case of retaliation for her discharge and does not address the objections to the magistrate judge's conclusions otherwise.

### b. Legitimate Non-Discriminatory Reasons

In the R&R, the magistrate judge concludes that the defendant's proffered reasons for terminating the plaintiff—insubordination and prolonged absences—were enough to meet the employer's exceedingly light burden under

---

[1] The alternative adverse actions urged by the plaintiff cannot survive summary judgment. The plaintiff's objection to the magistrate judge's conclusion regarding the purported refusal to assign her to light duty is without merit. Obj. at 4-6. The plaintiff's own testimony that she never requested a light duty assignment and was never denied such assignment defeats this claim. Pl. Dep. at 138, 141. Likewise, the plaintiff's objection to the magistrate judge's finding that there is an absence of evidence that the defendant interfered with her workers' compensation claim is meritless. Obj. at 7-8. The plaintiff points to nothing to show how any change in her work status by Dr. York had any bearing on her workers' compensation claim or benefits.

*McDonnell Douglas* analysis. The plaintiff objects to the magistrate judge's reliance on the plaintiff's failure to return FMLA paperwork as a reason for her termination because the defendant had already decided to terminate the plaintiff when this failure occurred. However, the record is replete with evidence insubordination by the plaintiff that took place prior to date the plaintiff contends the decision was made to terminate her. *See* DSUMF ¶¶ 57, 58, 27, 29, 30, and 31. Moreover, it is undisputed that the plaintiff was absent from work from December 2020 through March 2021. DSUMF ¶ 60. Therefore, the magistrate judge is correct in finding that the defendant met its exceedingly light burden of articulating legitimate non-retaliatory reasons for the adverse employment action.

### c. Evidence of Pretext

In addressing the motion for summary judgment, the magistrate judge considered the plaintiff's allegation that her failure to attend a fitness for duty examination was a pretextual reason for terminating her. R&R at 39-41. The magistrate judge rejected the plaintiff's argument that Mr. Allen Smith and Ms. Maya Smith had no authority to require the exam demonstrates pretext and could not articulate why such an exam was required. Id.

In the objections, the plaintiff makes the same arguments to this court. Obj. at 14-15. However, as explained by the magistrate judge, to establish

pretext, "a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-[retaliatory] decision." R&R at 40 (quoting *Woodard v. Fanboy, LLC*, 298 F.3d 1261, 1265 (11th Cir. 2002). Here, there is no evidence that Mr. Smith and Ms. Smith did not honestly believe that a fitness for duty examination was needed and that they had the authority to require it.

More importantly, even if the plaintiff could establish that the reason given was false, she must also show that retaliation was the real reason. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020). Here, the plaintiff offers no evidence that retaliation was the real reason for the decision to terminate her. Rather, the plaintiff offers her own speculation that "Someone obviously told Allen Smith or Maya Smith that if they could send Plaintiff to a Fitness for Duty Exam, then they could fire her with no consequences." Obj. at 16. Conclusory allegations and assertions are not sufficient to carry this burden. *See Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

## IV. Conclusion

For the reasons stated above, the court OVERRULES the plaintiff's objections and ADOPTS the magistrate judge's R&R [Doc. No. 75]. The

defendant's motion for summary judgment is GRANTED [Doc. No. 65].  As no

matters remain before this court, the clerk is DIRECTED to close this case.

**SO ORDERED** this 16th day of November, 2023.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge